```
                                    U.S. DISTRICT COURT
                                    NORTHERN DISTRICT OF TEXAS
                                         FILED

                                       NOV 14 2006

                                    CLERK, U.S. DISTRICT COURT
                                    By _____
                                           Deputy
```

United States District Court

__NORTHERN__ _____ DISTRICT OF _____ TEXAS

UNITED STATES OF AMERICA
V.
RONALD C. PEARSON                    CRIMINAL COMPLAINT
1132 Rock Creek Drive
Garland, Texas 75040                 CASE NUMBER: 3:06-MJ-450

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about November 30, 2004, and January 29, 2005, and continuing through November 12, 2006, in Dallas County, in the Northern District of Texas, defendant did,

> knowingly receive child pornography that had been mailed, transported, or shipped in interstate commerce by any means, including by computer; and knowingly possessed images of child pornography that had been mailed, transported or shipped in interstate commerce by any means, including by computer, in violation of Title 18 United States Code, Sections 2252(a)(2) and (a)(4)(B).

I further state that I am a Special Agent of the Department of Homeland Security, Bureau of Immigration and Customs Enforcement (ICE), and that this complaint is based on the following facts:

> See Attached Affidavit of Special Agent Bradley Hudson, which is incorporated and made a part hereof by reference.

Continued on the attached sheet and made a part hereof:    XX Yes    No

_____
Bradley Hudson
Special Agent
DHS/ICE

Sworn to before me and subscribed in my presence, on this _19_ day of November 2006, at Dallas, Texas.

HONORABLE PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE          _____
Name & Title of Judicial Officer              Signature of Judicial Officer

## AFFIDAVIT IN SUPPORT OFCRIMINAL COMPLAINT

I, Special Agent Bradley Hudson, being duly sworn according to law, depose and state the following:

1.      I am a Special Agent (SA) with the Department of Homeland Security, Bureau of Immigration and Customs Enforcement ("ICE").  I have been employed as a federal law enforcement officer for approximately 8 years.  From 1998 through 2002, I was a Special Agent with the United States Customs Service.  From 2002 until May of 2006, I  was an Air Marshal with the Federal Air Marshal Service.  In May of 2006, I joined ICE as a Special Agent.  Prior to becoming a federal law enforcement officer, I was a Mississippi State Trooper for three years.  I am presently assigned to the ICE Field Office in Dallas, Texas.  My responsibilities include the investigation of criminal violations relating to child exploitation and child pornography, including violations pertaining to the possession, distribution, and receipt of child pornography, in violation of 18 U.S.C. §§ 2252 and 2252A.  I have received training in the area of child pornography and child exploitation, and have participated in investigations involving these violations.  In the course of these investigations, I have had the opportunity to observe and review examples of child pornography (as defined in 18 U.S.C. § 2256) in all forms of media, including computer media, and I have become familiar with the methods and tactics used to collect, distribute and store child pornography.

2.      I submit this Affidavit in support of a criminal complaint charging Ronald C.

Pearson, 1132 Rock Creek Drive, Garland, Texas 75040, with violations of federal law.

Specifically, this Affidavit sets forth facts, and suggests reasonable inferences from those

facts, that establish there is probable cause to believe that Ronald C. Pearson violated

Title 18 United States Code, Section 2252(a)(2), which makes it a crime to knowingly

receive child pornography transported in interstate commerce; and Section 2252(a)(4)(B),

which makes it a crime to knowingly possess child pornography that has been transported

in interstate commerce by any means.

3.      I make this affidavit based upon my own personal  knowledge and observations in

the course of this investigation, as well as information and observations reported to me by

other law enforcement officials.  Because this affidavit is submitted for the limited

purpose of establishing probable cause for a search warrant for the premises identified

above, I have not included in the affidavit all the relevant information known to me and

gathered to date in this investigation.

## PERTINENT STATUTES

4.      Title 18 United States Code, Section 2252 provides, in pertinent part:

(a)     Any person who –
        . . .

        (2)     knowingly receives, or distributes, any visual depiction that
        has been . . . shipped or transported in interstate or foreign commerce, . . .
        by any means including by computer, or knowingly reproduces any visual
        depiction for distribution in interstate or foreign commerce . . ., if –

(A)     the producing of such visual depiction involves the use of a
minor engaging in sexually explicit conduct; and

(B)     such visual depiction is of such conduct;

. . .

(4)     either --

. . .

(B)     knowingly possesses 1 or more books, magazines, periodicals,
films, video tapes, or other matter which contain any visual
depiction that has been . . . shipped or transported in interstate
or foreign commerce, or which was produced using materials
which have been . . . so shipped or transported, by any means
including by computer, if –

(i)      the producing of such visual depiction involves the use
of a minor engaging in sexually explicit conduct; and

(ii)     such visual depiction is of such conduct;

. . .

shall be punished as provided in subsection (b).

(b)(1)  Whoever violates, or attempts or conspires to violate, paragraph (1) . . .
of subsection (a) shall be fined under this title and imprisoned not less than
5 years and not more than 20 years, . . . .

5.      Title 18 United States Code, Section 2256 defines "sexually explicit conduct" to

mean actual or simulated:

(i)      sexual intercourse, including genital-genital, oral-genital, anal-
genital, or oral-anal, whether between persons of the same or
opposite sex;

(ii)     bestiality;

(iii)    masturbation;

(iv)     sadistic or masochistic abuse; or,

(v)     lascivious exhibition of the genitals or public area of any person; . . .

## FACTS ESTABLISHING PROBABLE CAUSE

6.     In November 2004, The United States Immigration and Customs Enforcement

(ICE), Cyber Crimes Center (C3) received information from the National Center for

Missing and Exploited Children ("NCMEC") indicating that two websites with the

Uniform Resource Locators (URLs), respectively, of "www.myillegalsite.net," and

"www.myillegalwebsite.com," displayed images of child pornography.  The report from

NCMEC indicated that a representative had accessed the first of the two sites,

"www.myillegalsite.net," and observed what appeared to be a commercial site offering to

sell explicit images of sex with minors.  The title page of the website stated:

> "Free-Preview-Pedo Land 2004 (updated 06/03/2004)-Real
> Children Porno    Pay Site-CHILD FUCK! ABSOLUTELY
> ILLEGAL!!!"

7.     On November 12, 2004, Senior Special Agent (SSA) Michelle Dowling of ICE

C3, tried to access the first of the two websites and discovered that the site was no longer

available.

8.     That same day, SSA Dowling attempted to and was able to access the second of

the two websites, "www.myillegalwebsite.com."  The home page of this website depicted

9 images of prepubescent males and females engaged in various sexual acts with adults;

at least two of these images depicted children previously identified by law enforcement.

The home page contained the following text:

No Fakes.  2-12 y.o. Girls and Boys in video, photo, text content without any censure!
ABSOLUTELY ILLEGAL
REAL Hardcore Fuck of Little Girls, Brutal Rapes, Sweet Love
FUCK the FBI!
P. Land is time approved site.  Working since 2000 year and no one of the users haven't any troubles with law, because on this site you have guaranteed 100% privacy and security from Trojans and any FBI spies

9.    The home page of this website also provided a "JOIN NOW" link.  The page containing the "JOIN NOW" link also depicted an image of a previously identified prepubescent victim engaged in a sexual act with an adult male.  SSA Dowling activated the "JOIN NOW" link and was redirected to the URL "www.mybilling.org."  The home page of this website listed several payment options; the preferred payment options were e-gold, bank wire transfer, credit card, or Western Union.

10.    On November 17, 2004, SSA Dowling determined that the website "www.myillegalsite.net" resolved to IP address 198.170.255.120, and that the registrant for this IP address was Verio, Inc. ("Verio"), a large web hosting company located at 8005 Chester Street, Englewood, Colorado 80112.  This same date, SSA Dowling determined that the website "myillegalwebsite.com," resolved to IP address 198.66.213.57, and that the registrant for this IP address also was Verio.

11.    Several weeks later, ICE C3 received another report from NCMEC indicating that the website at the URL "www.myillegalstorage.info" displayed child pornography.  That same date, December 10, 2004, SSA Dowling accessed this website and observed that the home page appeared to contain exactly the same content as the home page of the website "www.myillegalwebsite.com," which she had accessed the previous month and is

described in paragraphs 8 and 9 above. SSA Dowling subsequently determined that the website "www.myillegalstorage.info" resolved to the IP address 161.58.132.244, and that this address was registered to Verio.

12.     On December 10, 2004, SSA Dowling, acting in an undercover capacity, accessed the website "www.myillegalstorage.info." The website home page contained the following text:

> CONGRATULATIONS!
> We protect our clients from all troubles with police and law!
> Congratulations, you are one step over the biggest archive of child porno photos and movies. Our price is too high, because we pay big money to host this illegal site. But we promise our member section won't be delete thousands times like other ones!
> Join Now
> Accepted all credit cards
> Fuck the FBI!!!P.Land is "time approved" site. We have been working since 2000 year, and no one of users haven't any troubles with law because on this site you have guaranteed 100% privacy and security from Trojans, viruses and any FBI spies.

13.     SSA Dowling clicked on a "JOIN NOW" link located on the second page of the website and was redirected to another website, located at the URL "www.mybilling.org/auth/2781091." The home page of this website displayed a form for enrollment in the website "www.myillegalstorage.info." This online form had four fields for customer information: "full name," "country," "e-mail address," and "friend's ID." The home page also displayed four payment alternatives: e-gold, bank wire transfer, credit card, and Western Union. SSA Dowling purchased the membership using e-gold, Ltd.

14.     Later that same day, SSA Dowling received an electronic mail to her undercover
e-mail account from the e-mail address "pedoland2004@yahoo.com." The e-mail
contained a user name and password, and instructions for logging into the website
"www.myillegalstorage.info." The e-mail also identified a separate members-only
website, located at the IP address "205.209.184.120."

15.     Following the instructions contained in the e-mail from
"pedoland2004@yahoo.com," SSA Dowling accessed the member-only website at the IP
address "205.209.184.120." The home page of this site displayed the following text:

> "Welcome to Pedoland 2004, Welcome to secret CP member area. Please
> do not give your login/password for this member zone, differently [sic] they
> will be banned."

16.     On the members-only website, SSA Dowling observed a total of approximately
7,496 still digital images, 300 video files, and approximately 28 ZIP archive files that
were available for view and download. SSA Dowling sampled the images available on
the site and observed depictions of prepubescent males and females engaging in sexually
explicit conduct with adult males. Subsequent forensic analysis of the images on this site
revealed that at least 96 images had the same digital signature (matching hash values) as
previously identified victims of child exploitation.

17.     On January 12, 2005, a federal search warrant was served on Verio authorizing the
seizure of any evidence of violations of federal law relating to child pornography
contained on the websites "www.myillegalsite.net," "www.myillegalwebsite.com," and
"www.myillegalstorage.com." In response to the warrant, Verio provided ICE C3

records containing information related to the subscribers of the websites, and logs recording subscribers' account access, including the IP address assigned to the subscribers at the time of access and the times and dates of access.

18.     The records provided by Verio contained information suggesting that at least ten other websites hosted at Verio were related to the three websites reported by NCMEC: "www.myillegalsite.net," "www.myillegalwebsite.com," and "www.myillegalstorage.info."[1]  Two of those ten sites appeared to be identical to the payment sites previously described in paragraph 13, above; eight of the ten sites advertised the sale of child pornography.  A review of the records related to these latter eight sites revealed that they contained the identical content as the websites reported by NCMEC, and described in paragraph 8.  Additional information provided by Verio led to the discovery of a third, related payment site at the URL, "www.teen.com."

19.     On February 17, 2005, a second federal search warrant was served on Verio authorizing the seizure of any evidence of violations of federal law relating to child pornography contained on the website "www.teen.com."   Again, the records provided by Verio in response to the warrant included information related to the subscribers of the website, and logs recording subscribers' account access, including the Internet Protocol address assigned to the subscribers at the time of access, and the times and dates of access.

---

[1]  SSA Dowling determined that at the time of the execution of the search warrant at Verio, Inc., the following URLs were no longer active: http://www.myillegalstorage.info and http://www.myillegalsite.net.

20.     Based on the records provided by Verio, SSA Dowling determined that the three

identified payment sites supported the following websites: "<u>www.myillegalwebsite.net,</u>"

"<u>www.justmetal.com,</u>" and "<u>www.teen.com.</u>"  SSA Dowling also determined from these

records that the three, related payment websites contained the same content, which also

appeared identical to the content observed on the website

"<u>www.mybilling.org/auth/2781091,</u>" which SSA Dowling had accessed on December 10,

2004 to purchase a membership in the website "www.myillegalstorage.info."

21.     ICE Computer Forensics Agent (CFA) Douglas Skinner subsequently analyzed the

content of two of the payment websites hosted on the Verio servers.  Based on this

analysis, CFA Skinner determined that the information entered by the customer to

complete the online enrollment form was stored by each website and organized into

several different files.

22.     Based on a review of the records of  the three payment sites, I determined that an

individual using the name Ron Pearson had made three separate purchases of child

pornography using three different credit cards.  Pearson made the first purchase on

November 30, 2004, using credit card number 4253304001702739; he also provided an

address of 10620 Creekmere Drive, Dallas, Texas, and a telephone number of

214-321-9717.  Pearson made the second purchase on January 29, 2005, using credit card

number 4056031880184882; he used the same address and phone number as he provided

in connection with the first purchase.  Pearson made the third purchase on January 29,

2005, using credit card number 4465420143091387; for this purchase, he listed an

address of 1132 Rock Creek Drive, Garland, Texas, and a telephone number of

972-494-3355. All three transactions listed an e-mail address of rcPearson@webtv.net

23.    On November 2, 2006, I conducted a search of the Dallas Central Appraisal

website (DallasCAD) for properties listed to Ronald C.Pearson. This search revealed that

Pearson previously had owned the residence at 10620 Creekmoore Drive, Dallas, Texas,

and currently owns the residence at 1132 Rock Creek Drive, Garland, Texas.

24.    On November 7, 2006, I conducted surveillance of 1132 Rock Creek Drive,

Garland, Texas. During this surveillance, I observed a 1999 Nissan Altima bearing Texas

license number 014PYP parked at the residence. A check with the Texas Department of

Public Safety revealed the vehicle is currently registered to Ron Pearson at the address

10620 Creekmoore Drive, Dallas, Texas.

25.    On November 9, 2006, I contacted Microsoft Corporation, which operates and

offers the "webtv" service, and was informed by a representative that Pearson previously

had a webtv account that included the e-mail address rcPearson@webtv.net. Pearson

discontinued the service in June 2006.

26.    On November 13, 2006, SSA Patrick McGaha and I interviewed Pearson at his

residence at 1132 Rock Creek Drive, Garland, Texas. Initially, we advised Pearson that

we were attempting to close a case involving several purchases made using credit cards

associated with accounts in his name. I asked Pearson if he had ever noticed fraudulent

charges on his credit card monthly billing statements. Pearson stated he was aware of

only one unauthorized charge on his credit card accounts, which was a charge to a

business called the Video Professor.  I asked Pearson if he could verify that credit card numbers 4056031880184882, 4253304001702739, and 4465420143091387 were his. Pearson responded that he could not because he cancelled all of his credit cards, though he noted that he recently had obtained a credit card for airline miles.

27.    I asked Pearson if he had used webtv, and he responded that he had used webtv until recently.  Pearson stated that his present ISP is Verizon.

28.    During the interview, I advised Pearson that someone, using his rcPearson@webtv.net account, had purchased child pornography using his credit cards. SSA McGaha asked Pearson if he had viewed any images of child pornography.  Pearson responded that he had viewed child pornography while conducting searches on the internet for teen models.  Pearson stated that he had seen many images of child pornography of little girls; he further admitted he thought some of the images were of children as young as age nine.

29.    During this interview, Pearson stated that if he had traveled to the Philippines on multiple occasions to visit a "penpal," whom he did not identify.  In the past two years, DHS records reveal that Pearson traveled outside the United States at least three times. Information provided by a Customs and Border Protection (CBP) personnel indicated that when questioned on return to the United States on August 9, 2006, Pearson stated that he had traveled to the Phillipines twelve times to visit friends.

30.     After the interview, I conducted a surveillance on Pearson's residence.
Pearson was observed exiting his residence, looking around, and placing a large
cardboard box into the trunk of his vehicle.

31.     On November 13, 2006, this Court issued a search warrant authorizing the search
of Pearson's residence and automobile for and seizure of any fruits, instrumentalities and
evidence of violations of, among other things, violations of federal laws related to the
receipt and possession of child pornography.  Later that same day, accompanied by other
federal agents, I executed this search warrant at 1132 Rock Creek Drive, Garland, Texas.
After being advised of his Miranda rights, Pearson waived these rights and agreed to
answer questions.

32.     Pearson admitted that he had previously subscribed to web sites that contained
child pornography, and that he had paid for these subscriptions using his personal credit
cards.  Pearson further admitted that he had downloaded from these websites, and from
other free websites, child pornography, including images of boys and girls appearing to be
from ages eight to thirteen; and, that he had copied ("burned") these images to computer
compact disks (CDs).  Pearson stated that since 1997, he had downloaded and collected
thousands of images of child pornography.  During the search, agents located and seized
approximately twelve computer disks from his residence believed to contain child
pornography.

33.     During the interview, I asked Pearson where his computer was located, as well as the location of the box I had observed him load into the trunk of his vehicle after our interview yesterday.  Pearson responded that he had taken the box to Edwin PEGELOW, a friend, for safe keeping.  Pearson also stated that he had informed  PEGELOW that he had "questionable" images on the computer located at his residence, and had asked Pegelow if he knew anyone who could erase these images.  Pearson stated that Pegelow had agreed to take his computer and have the questionable images deleted by an unnamed third party. I asked Pearson what was contained in the cardboard box that was now in PEGELOW's possession.  Pearson responded that the box contained computer disks, video tapes, printed photographs, and a book, all of which contained child pornography.

34.     At approximately 9:45 P.M., agents arrived at PEGELOW's residence at 2621 Ripplewood, Garland, Texas.   PEGELOW turned over to the agents the box he had been given by Pearson.  In the cardboard box, agents recovered eighteen video tapes, one book, fifteen computer disk, one digital video disk, and numerous printed images of child pornography.

35.     On November 14, 2006, I reviewed images contained on one of a computer disk located in the cardboard box, labeled "01."  This computer disk contained the following images:

> An image labeled 1_2.jpg, depicting a prepubescent male engaged in oral sex on an adult male;
>
> An image labeled 2-2.jpeg, depicting a prepubescent female performing oral sex on an adult male;

An image labeled 10c.jpg, depicting a preschool age female performing oral sex on an adult male with ejaculate expressed in her mouth;

An image labeled 4p.jpg, depicting prebubscent female performing oral sex on an adult male.

36.     I also reviewed the digital video disc (DVD) in the box recovered from Pearson.  The DVD, entitled "Merry Boys", contained video depicting images of prepubescent males exposing their genitalia.  The video was ordered through the mail from Canada.

37.     I also reviewed files on several of the disks recovered from Pearson's residence, and determined that they contained numerous images of prepubescent boys and girls engaged in sexual activity.  Based on my training and experience, these images constitute child pornography.

38.     On November 8, 2006, I conducted a search of the State of Texas website for Teachers.  I discovered that Ronald Pearson was issued a teaching certificate on May 11, 1974, and the teaching license is still valid.

## CONCLUSION

Based on the information set forth above, I respectfully submit there is probable cause to believe that Ronald C. Pearson has committed violations of federal laws, including Title 18 United States Code, Section 2252(a)(2), relating to the receipt of child pornography, and Section 2252(a)(4), relating to the possession of child pornography.

Special Agent Brad Hudson
Department of Homeland Security
Bureau of Immigration and Customs Enforcement

Subscribed and sworn before me on this _____ day of November 2006.

UNITED STATES MAGISTRATE JUDGE