IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF TEXAS

DALLAS DIVISION



| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | Case No.: 3:06-CR-369-O(1) |
| | § | |
| RONALD C. PEARSON, | § | |
| Defendant-Movant. | § | |

---

## NOTICE OF SUPPLEMENTAL AUTHORITY

COMES NOW Movant and offers the following case citations as supplemental authority concerning the fact that persons convicted solely of image collection with no prior record have an extremely low incidence of recidivism in general and no statistically significant incidence of recidivism for "contact" offenses.

In FR v. St. Charles County Sheriffs Dept., No. SC89834, consolidated with State of Missouri v. Raynor, No. SC90164, the Supreme Court of Missouri, en banc made findings of fact as follows:

> While recognizing the dissent's evident concern about recidivism of sex offenders, rather than assuming that the rates are high, one should look at the data. Of the five categories of felony offenders in Missouri's

correctional population - drugs, nonviolent felonies, violent felonies, DWI (driving while intoxicated) felonies, and sex and child abuse - sex offenders have the lowest rates of recidivism.  Their rate of recidivism after two years is 5.3 percent, while recidivism rates for other categories of offenders are 9.6 percent for violent offenders, 14.9 percent for nonviolent offenders, 11.7 percent for drug offenders, and 11.4 percent for felony DWI offenders.  The rate of recidivism includes the likelihood of a convicted sex offender to commit any future crime, not just a sex offense.  Missouri Sentencing Advisory Commission, Recommended Sentencing Biennial Report 2009 at 46, available at: http://wwwmosac.mo.gov/file/2009%20Biennial%20Report.pdf (last accessed Jan. 8, 2010).

Concerning conditions of supervised release which include proximity restrictions, the Supreme Court for the State of California for the County of Los Angeles made the following finding of fact:

"The evidence presented suggests that despite lay belief, a sex offender parolee's residential proximity to a school or park where children regularly gather does not bear upon the parolee's likelihood to commit a sex offense against a child."  In Re Moreland, et al., Case Nos. PV512, PV527, PV533 and PV712.  See Exhibit B.

Finally, where a condition of supervised release impairs a protected associational interest, "our application of [§ 3583(d) requirements] must reflect the heightened constitutional concerns" involved.    U.S. v. Reeves, Nos. 08-2966-CR(L), 08-2975-CR(CON) p9, (2nd Cir. Jan. 7, 2010).  See Exhibit C.

Movant states that the above case authorities were just recently made available to him and are relevent to his argument that his conditions of supervised release are unnecessary and Constitutionally infirm in his case.

Respectfully submitted,

*Ronald C. Pearson*

Ronald C. Pearson
Reg. No. 36037-177
F.C.I. Seagoville
P.O. Box 9000
Seagoville, Texas   75159-9000

## CERTIFICATE (PROOF) OF SERVICE

I certify that on ___12th___ day of July, 2011, I placed the original and suitable copies of the Movant's "Notice of Supplemental Authority" in the prison mailbox, first class postage pre-paid, and addressed to:

One (1) original and two (2) copies to:

      Clerk, U.S. District Court
      Northern District of Texas
      Earl Cabell Federal Building
      1100 Commerce Street
      Dallas, Texas   75242

AND

One (1) copy to:

      U.S. Attorney's Office
      Earl Cabell Building
      1100 Commerce Street
      Dallas, Texas   75242

*Ronald C. Pearson*

Ronald C. Pearson



# SUPREME COURT OF MISSOURI
## en banc

| | |
|---|---|
| F.R., | ) |
|     Appellant, | ) |
| v. | )     No. SC89834 |
| ST. CHARLES COUNTY<br>SHERIFF'S DEPARTMENT, | ) |
|     Respondent. | ) |

(Consolidated with)

| | |
|---|---|
| STATE OF MISSOURI, | ) |
|     Appellant, | ) |
| v. | )     No. SC90164 |
| CHARLES A. RAYNOR, | ) |
|     Respondent. | ) |

### APPEAL FROM THE CIRCUIT COURT OF ST. CHARLES COUNTY
The Honorable Ted House, Judge

### APPEAL FROM THE CIRCUIT COURT OF AUDRAIN COUNTY
The Honorable Linda R. Hamlett, Judge

*Opinion issued January 12, 2010*

application.  In *Olive*, the requirements on the dam were enacted because the dam will continue to operate as a dam in the future and must do so safely.  In contrast, F.R. and Raynor served their time and are not shown to continue to operate as criminals; rather, each is a person with felony convictions – a past fact that by itself creates the obligation to move, not their present or future dangerousness.[14]  Raynor and F.R. received the punishment available at the time of their convictions.  They are under the same obligations as all other persons to obey the law; they have additional obligations or disabilities that were imposed upon them at the time of their convictions.  The dam, on the other hand, is still a dam and a known source of present and future danger.  To continue to exist, the dam must comply with restrictions imposed to ensure safe operation.  If the state in the current cases was required to present evidence that F.R. and Raynor are presently pedophiles – evidence of present or future dangerousness – the state legitimately might impose a present or future obligation not to live near a school.  There

_____

[14] While recognizing the dissent's evident concern about recidivism of sex offenders, rather than assuming that the rates are high, one should look at the data.  Of the five categories of felony offenders in Missouri's correctional population – drugs, nonviolent felonies, violent felonies, DWI (driving while intoxicated) felonies, and sex and child abuse – sex offenders have the lowest rates of recidivism.  Their rate of recidivism after two years is 5.3 percent, while recidivism rates for other categories of offenders are 9.6 percent for violent offenders, 14.9 percent for nonviolent offenders, 11.7 percent for drug offenders, and 11.4 percent for felony DWI offenders.  The rate of recidivism includes the likelihood of a convicted sex offender to commit any future crime, not just a sex offense.  Missouri Sentencing Advisory Commission, *Recommended Sentencing Biennial Report 2009* at 46, *available at* http://www.mosac.mo.gov/file/2009%20Biennial%20Report.pdf (last accessed Jan. 8, 2010).

**FILED**
Los Angeles Superior Court

NOV 01 2010

John A. Clarke, Executive Officer/Clerk

By _____, Deputy

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF LOS ANGELES

In re,

PRENTICE MORELAND, HAROLD BROWN, QUOC THAI PHAM, and ARTHUR LEE NEAL, SR.,

Petitioners,

On Habeas Corpus

) Case Nos.: PV000527, PV000533, PV000512, and PV000712
)
) ORDER RE APPLICATION FOR TEMPORARY STAY OF ENFORCEMENT OF PEN. CODE § 3003.5(b) AS TO REGISTERED SEX OFFENDERS ON ACTIVE PAROLE IN LOS ANGELES COUNTY

The Court has read and considered the petitioners' applications for a countywide stay of Pen. Code § 3003.5(b) as to registered sex offenders on active parole in Los Angeles County during the pendency of the instant litigation filed October 7, 2010, the respondent's opposition filed on October 14, 2010, and the petitioners' responses to the respondent's opposition filed on October 19, 2010 as well as the various declarations and exhibits filed by the parties and the arguments presented at the hearing on the matter. The petitioner moves the Court to stay enforcement of the Pen. Code § 3003.5(b) as to registered sex offenders on active parole in Los Angeles County during the pendency of the instant litigation. The request is granted.

### Petitioner Moreland's Writ Dismissed as Moot

Before addressing the merits of the petitioners' request, the Court dismisses petitioner Prentice Moreland's petition in Case No. PV000527 as moot. Petitioner Moreland recently

received relief in a petition for writ of mandate which relieves him of his duty to register as a sex offender under Pen. Code § 290. Because petitioner Moreland is no longer obligated to register as a sex offender, he is no longer subject to Pen. Code § 3003.5(b) and his petition is now moot. The petitioner has withdrawn the petition and it is dismissed as moot. The order to show cause is vacated as to petitioner Moreland. However, enforcement of Penal Code section 3003.5(b), including California Department of Corrections and Rehabilitation Policy No. 07-36 or any similar policy enforcing Penal Code section 3003.5(b) remains stayed as to petitioner Moreland pending his removal from the California Department of Justice's sex offender database.

### The Court's Authority to Fashion a Temporary Remedy

The parties seem to be in dispute regarding the nature of the order to show cause issued by the Court in the instant cases. In issuing the order to show cause, the Court made a *prima facie* determination that the petitioners have presented sufficient facts which, if ultimately found to be true, would indicate that section 3003.5(b) is unconstitutional on its face as well as unconstitutional as applied to the petitioners. While the Court has not made a final determination on the merits of the instant case, it made a preliminary determination that the petitioner was entitled to relief based on the facts as alleged by the petitioner. *People v. Hochberg* (1970) 2 Cal.3d 870, 875 n.4. That determination is tentative, not final. Moreover, while the order to show cause did not establish the facts as true, it did constitute a preliminary determination that, if true, the facts alleged by the petitioners would constitute a violation of their rights under existing law. *In re Serrano* (1995) 10 Cal.4th 447, 455.

This Court clearly has the authority to temporarily stay enforcement of Pen. Code § 3003.5(b) as to registered sex offenders on active parole in Los Angeles County. The respondent has not suggested that the Court would lack the authority to permanently stay enforcement should the petitioners ultimately prevail on the merits. Indeed, the Court surely would have the authority to fashion such an appropriate remedy on habeas corpus. This is because "[i]nherent in the power to issue the writ of habeas corpus is the power to fashion a remedy for the deprivation of any fundamental right which is cognizable in habeas corpus." *In re Crow* (1971) 4 Cal.3d

ah

613, 619 fn.7.  "The very nature of the writ [of habeas corpus] demands that it be administered with the initiative and flexibility essential to insure that miscarriages of justice within its reach are surfaced and corrected."  *Harris v. Nelson* (1969) 394 U.S. 286, 290-91.  "The scope and flexibility of the writ" are "jealously guarded by courts" precisely because of the writ's "ability to cut through barriers of form and procedural mazes".  *Id.*

That the Court has the flexibility and authority to craft a permanent remedy for the deprivation of rights alleged in the petitions also suggests that it has the authority to craft a similar temporary remedy during the pendency of the litigation.  This is particularly so where, as in the instant case, the Court has already made a preliminary determination that the petitioners have alleged sufficient facts which, if ultimately found to be true, will warrant such permanent relief.  The petitioners have alleged immediate and significant harm – namely that the respondent's enforcement of Pen. Code § 3003.5(b) as a condition of parole forces registered sex offenders who are on active parole in Los Angeles County to either become homeless or be sent to prison.

Given the immediacy and severity of the alleged harm, the petitioners seek temporary relief while the claims are adjudicated on the merits.  Such temporary relief is warranted.  "[T]he office of the writ is to provide a *prompt and efficacious* remedy".  *Harris v. Nelson, supra,* 394 U.S. at 291.  The Court is not a "potted plant" (see *In re Scott* (2004) 119 Cal.App.4th 871, 898) and need not sit idly by in the face of immediate, ongoing, and significant violations of parolees' constitutional rights.  See *In re Brindle* (1979) 91 Cal.App.3d 660, 669-670 ["the very nature of the writ demands that it be administered with the initiative and flexibility essential to insure that miscarriages of justice within its reach are surfaced and corrected"] [citing *Haris v. Nelson, supra*].  This is particularly so in light of the scope of the alleged violations.

Additionally, the need for the temporary relief sought by the petitioners grows more patent each day.  In addition to the four named petitioners in this consolidated order to show cause, the court is now in receipt of more than 650 habeas petitions raising nearly identical issues of law and fact.  550 of those petitions have been filed in the last six months alone, and the rate of filings continues to increase.  While the court has not issued an order to show cause in all 650

1  cases, it has issued a temporary stay of Pen. Code § 3003.5(b) as against all 650 petitioners and

2  held the petitions in abeyance pending disposition of the instant order to show cause.  The

3  respondent does not challenge those individual stays.

4        Furthermore, beyond the more than 650 writs already on file with the court, the Public

5  Defender and Alternate Public Defender are in the process of preparing hundreds of additional

6  writs, and new petitioners continue to approach counsel or file *in pro per* with the court daily.

7  There are roughly 2,000 parolees subject to Pen. Code § 3003.5(b) on active parole in Los

8  Angeles County, all of whom will face identical residency restrictions as the 650 petitioners who

9  have already filed with the court.  Given the Court's authority to flexibly and promptly fashion

10  an appropriate remedy on habeas corpus, it is undisputed that the Court has the authority to

11  temporarily stay enforcement of Pen. Code § 3003.5(b) as to an individual petitioner.  See *In re

12  E.J.* (2010) 47 Cal.4th 1258 [where Supreme Court stayed enforcement of Pen. Code § 3003.5(b)

13  as to the named petitioners pending disposition of the case].  The flexibility of the writ, however,

14  also confers upon the Court the authority to fashion broader temporary relief as the

15  circumstances require.

16        Here, given the more than 650 writs already on file with the court and the hundreds more

17  that are being prepared for filing by various counsel, it appears overwhelmingly likely that nearly

18  half of all the registered sex offenders in Los Angeles County will have enforcement of Pen.

19  Code § 3003.5(b) stayed individually in the near future.  Additionally, the continued deluge of

20  new petitioners every day makes it very likely that nearly every sex offender on active parole

21  subject to Pen. Code § 3003.5(b) in Los Angeles County will soon have an individual stay.  It is

22  now obvious to the court that the relevant question is not whether a parolee subject to Pen. Code

23  § 3003.5(b) will file a petition and receive a stay, but how long that parolee will be transient

24  before counsel is able to draft the petition and the court is able to process it.

25        At hearing on the matter, the respondent contended that the petitioners have not offered

26  any evidence that there is an actual harm which is presently obtaining to the individual parolees

27  who have not yet filed petitions.  This contention obviously fails.  In addition to the evidence of

28  strong correlation between the implementation of Pen. Code § 3003.5(b) and a significant rise in

ab

1  homelessness discussed below, the rate of *continued* filings itself supports the petitioners'
2  contention. Though a rare exceptional petitioner may be residing in permanent compliant
3  housing, the vast majority of the petitions which continue to flood the Court are filed by parolees
4  who are either already homeless or for whom homelessness is imminent. The respondent urges
5  the court to bury its head in the sand and pretend that the hundreds of petitions which continue to
6  be filed each month, and nearly all of which allege present or immediate homelessness as a result
7  of enforcement of Pen. Code § 3003.5(b), is not at least preliminary evidence that similar alleged
8  constitutional violations are being imposed upon parolees who have not yet filed petitions. The
9  Court cannot do so.

10

11      <u>The Petitioners Have Demonstrated a Strong Likelihood of Success on the Merits</u>
12      Among their several contentions, the petitioners contend that Pen. Code § 3003.5(b) is
13  unconstitutional as applied to active parolees who are required to register as sex offenders in Los
14  Angeles County because it amounts to an unconstitutional banishment. The petitioners have
15  alleged numerous facts which, if found true, would demonstrate that there is insufficient housing
16  which is both compliant with the residency restriction in Pen. Code § 3003.5(b) and is also
17  affordable. If, as the petitioners have alleged, compliant, affordable housing is virtually non-
18  existent in Los Angeles County, enforcement of Pen. Code § 3003.5(b) would effectively banish
19  the relevant parolees from residential living within the vast majority of Los Angeles County and
20  force them to make the choice between homelessness and incarceration.
21      As the Court of Appeal has very recently recognized, the "residency restriction" provided
22  in Pen. Code § 3003.5(b), "restrains the right to choose a home and limits the right to live with
23  one's family. It effectuates traditional banishment under a different name". *People v. Mosley*
24  (2010) 188 Cal.App.4th 1090, 1112. Banishment as a condition of parole impermissibly
25  "impinges on constitutional entitlements -- the right to travel and freedom of association."
26  *People v. Bauer* (1989) 211 Cal.App.3d 937, 944 [holding in context of probation condition]; see
27  also *People v. Beach* (1983) 147 Cal.App.3d 612, 620-23 [same]; *People v. Dominguez* (1967)

ah

1   256 Cal.App.2d 623, 628 [same]; *People v. Blakeman* (1959) 170 Cal.App.2d 596, 597-99
2   [same].

3       The respondent contends that the issue of banishment is not a "facial challenge" and
4   therefore urges that it must be considered on an individual basis. However, the issue at hand is
5   not whether the temporary enforcement of Pen. Code § 3003.5(b) is facially invalid throughout
6   the state. Rather, the relevant question is whether Pen. Code § 3003.5(b) constitutes
7   unconstitutional banishment *as applied to registered sex offenders on active parole in Los*
8   *Angeles County.*

9       The respondent also contended at hearing on the matter that construing the facts alleged
10  by the petitioners as banishment would impermissibly expand the definition of banishment for
11  the purposes of preliminary relief. However, construing the facts alleged as constituting
12  banishment does not expand the definition of banishment. As noted above, the Court of Appeal
13  has already determined that the residency restriction in Pen. Code § 3003.5(b) "effectuates
14  traditional banishment under a different name". *People v. Mosley, supra,* 188 Cal.App.4th at
15  1112. Though the respondent attempts to distinguish that holding in *Mosley* from the instant
16  case on procedural posture, no distinction exists. In holding that mandatory sex offender
17  registration constitutes punishment in light of Pen. Code § 3003.5(b), the Court of Appeal
18  specifically held that the residency restriction effectuates traditional banishment. Given that
19  holding, the facts alleged, and the longstanding proscription against banishment as a condition of
20  parole, the petitioners have demonstrated a strong likelihood of success on the merits of the
21  banishment claim.

22      The petitioners raise other claims of constitutional infirmity, but the Court need not
23  address them here because the banishment claim is sufficient for the purposes of this order.

24

25  <u>The Balance of Harms Weighs Heavily in Favor of a Temporary Countywide Stay</u>
26      Because the petitioners have demonstrated a strong likelihood of success on the merits,
27  the Court now considers whether the balance of harms weigh in favor of the requested stay.
28  They do.

ab

As noted above, the primary consequence of enforcing Pen. Code § 3003.5(b) against registered sex offenders on active parole in Los Angeles County is that parolees are being forced to choose between incarceration and homelessness.  As Chief Charlie Beck of the Los Angeles Police Department recently noted, "[r]estricting where offenders can live [pursuant to Pen. Code § 3003.5(b)] has resulted in a marked increase of homeless/transiet registrants."  Pet. Exhibit A, "Fact Sheet", p. 1 ("LAPD Report").  In the city of Los Angeles alone, the number of homeless sex offenders on active parole jumped from 30 in 2007 when the respondent began enforcing Pen. Code § 3003.5(b) to 259 in September 2010.  *Id.*  The Court also notes that by September 2010, the Court had already issued 400 individual stays of Pen. Code § 3003.5(b).  Though some sex offender parolees may have remained homeless even after receiving a stay, it seems highly likely that the vast majority of those 259 homeless parolees in the city of Los Angeles alone were additional to, not duplicative of, the 400 offenders who had already received stays in Los Angeles County.

Not only does the exploding rate of homeless sex offenders on active parole pose an obvious harm to those forced to become homeless or go to prison, it presents an equally pressing problem for public safety.  While the empirical studies cited by the petitioners have found no evidence "that *residential* proximity to schools or parks affects re-offense" ("Level Three Sex Offenders Residential Placement Issues:  2003 Report to the Legislature" (2003) Minnesota Department of Corrections, p. 11) the petitioners' claim that Pen. Code § 3003.5(b) actually *undermines* public safety does find support in the evidence presented.  Chief Beck of the LAPD, for instance, noted that Pen. Code § 3003.5(b) prohibits many sex offenders from taking on stable living arrangements with family or in sober living facilities which would *reduce* the likelihood of re-offense.  See LAPD Report, 1-2 [finding that Pen. Code § 3003.5(b) prevents offenders from living in environments where they may "hold each other accountable for their actions including reporting behavior that would lead to re-offending" and noting that, where compliant housing is actually available, "[h]ousing is often driven by availability rather than suitability and optimal occupancy rates"].  Rather than protecting public safety, it appears that

the sharp rise in homelessness rates of sex offenders on active parole in Los Angeles County actually *undermines public safety.*

The balance of harms then, appears to weigh entirely in favor of staying enforcement of Pen. Code § 3003.5(b). The evidence presented suggests that despite lay belief, a sex offender parolee's residential proximity to a school or park where children regularly gather does not bear upon the parolee's likelihood to commit a sex offense against a child. This is likely due in part to the fact that many sex offenders on active parole are required to register for sex offenses having nothing to do with children, like indecent exposure. Pen. Code § 314.1. Even where the offender does have a history of sex offenses against a minor, however, "the residency restriction would allow a convicted child molester to stroll past the school and eat ice cream in the park—as long as he or she retreats at night to housing far from a school or park. And there, the child molester may live undisturbed next door to small children." *People v. Mosley, supra,* 188 Cal.App.4th at 1112.[1] Furthermore, the interest in public safety weighs in favor of a stay because it allows parolee sex offenders to obtain stable housing, reducing the risk of re-offense and increasing law enforcement's ability to monitor the parolee's whereabouts.

It is also worth noting that, although the petitioners raise the issue of the balance of harms in their application for the countywide stay, the respondent does not challenge the petitioner's assertion that the balance of harms, both to the petitioners and to public safety, weighs heavily in favor of the countywide stay.[2]

///

///

---

[1] Pursuant to the newly enacted Pen. Code § 3053.8, certain sex offenders would be prohibited from entering a park or a school during school hours. However, that more limited provision does nothing to prevent a parolee from approaching a school during school hours. Additionally, it restricts its application to parolees who are currently on parole for a sex crime against a child. Pen. Code § 3053.8(a). Pen. Code § 3003.5(b), however, applies even to a parolee on parole from a non-sex offense (like burglary or possession of a controlled substance) but who is required to register as a sex offender as a result of a 20-year-old conviction for indecent exposure.

[2] The Court also notes that nothing in the instant order precludes the respondent from continuing to enforce the more narrowly tailored residency restriction found in Pen. Code § 3003(g) which restricts offenders who have a history of sex offenses against children and who have recently been determined to be "high risk" offenders from living within a half-mile of a school.

ah

-8-

The Petitioners Have Demonstrated a Pattern of Constitutionally Infirm Application of Pen. Code § 3003.5(b)

The respondent contends that the only relevant question for the purposes of the instant request for a countywide stay is whether the petitioners have "show[n] a pattern of impermissible enforcement" of Pen. Code § 3003.5(b). *Tobe v. City of Santa Ana* (1995) 9 Cal.4th 1069, 1085. At this stage in the proceeding, however, the level of proof required to "show a pattern of impermissible enforcement" for the purpose of a limited, interim remedy is diminished. The petitioners need not prevail on the ultimate merits of the case before they are able to obtain interim relief. Here, the petitioners have alleged sufficient facts which, if found true, would demonstrate a significant pattern of impermissible enforcement. Indeed, the petitioners have repeatedly noted the hundreds of petitions already on file with the court as evidence of a wide-ranging and consistent pattern of impermissible enforcement of Pen. Code § 3003.5(b). The petitioners have easily met their burden for the preliminary purpose of alleging sufficient facts to warrant temporary relief.

Moreover, despite the respondent's representations at oral argument on the matter that the balance of harms is irrelevant to the question of whether the petitioners may obtain the temporary countywide stay they seek, the Court believes that the balance of harms is crucial to the propriety of the temporary countywide stay. Had the Court received any evidence to suggest that a countywide stay would somehow undermine public safety, the result here may be different. The Court received no such evidence. As discussed *ante*, all the evidence presented suggests that it is *enforcement* of Pen. Code § 3003.5(b) in Los Angeles County which undermines public safety, not the countywide stay.

Conclusion

The Court's well established flexible authority to grant appropriate relief on habeas corpus necessarily includes the authority to fashion a temporary remedy which stays the enforcement of Pen. Code § 3003.5(b) as to active parolees who are required to register as a sex offender in Los Angeles County while the instant litigation is pending. Because the petitioners

ah

1   have demonstrated a strong likelihood of success in their contention that enforcement of Pen.

2   Code § 3003.5(b) against registered sex offenders on active parole in Los Angeles County is

3   unconstitutional, because the interests of both the parolees and public safety weigh in favor of

4   the stay, and because the petitioners have made sufficient preliminary allegations of fact and law

5   to suggest a pattern of impermissible enforcement the petitioners' application is granted.

6       Accordingly, enforcement of Penal Code section 3003.5(b), including California

7   Department of Corrections and Rehabilitation Policy No. 07-36 or any similar policy enforcing

8   Penal Code section 3003.5(b), is stayed at to all registered sex offenders who are subject to the

9   terms of section 3003.5(b) and who are currently serving a term of active parole in Los Angeles

10  County pending resolution of the instant case.

11      The clerk is to give notice.

12

13

14

15

16  Dated: _____11/1/10_____

17                                          PETER ESPINOZA

18                                          Judge of the Superior Court

19

20

21

22                          

23

24

25

26

27

28

ah                                  -10-

08-2966-cr (L), 08-2975-cr (con)

1  **UNITED STATES COURT OF APPEALS**
2  FOR THE SECOND CIRCUIT
3
4
5  August Term, 2008
6
7  (Argued: May 27, 2009                    Decided: January 7, 2010)
8
9  Docket Nos.  08-2966-cr (L), 08-2975-cr (con)
10
11
12
13  UNITED STATES OF AMERICA,
14                                                *Appellee*,*
15
16  — v .—
17
18  LAMONT REEVES,
19                                    *Defendant-Appellant.*
20
21
22  Before:               LEVAL, POOLER, AND B.D. PARKER, *Circuit Judges.*
23
24
25
26  Appeal from a sentence imposing a condition of supervised release requiring Defendant to notify
27  the Probation Department upon his entry into a significant romantic relationship and to inform
28  the other party of his offense of conviction.  We conclude that the release condition is unduly
29  vague and not reasonably related to the goals of sentencing.  VACATED and REMANDED.
30
31
32
33                    Darrell B. Fields, Federal Defenders of New York,
34                    Inc., New York, NY, *for Defendant-Appellant*
35                    *Lamont Reeves.*
36
37                    Daniel A. Spector, Assistant United States Attorney,
38                    *for* Benton J. Campbell, United States Attorney,

1

1                                         Eastern District of New York (Susan Corkery,

2                                         Assistant United States Attorney, *on the brief*),

3                                         Brooklyn, NY, *for Appellee United States of*

4                                         *America.*

7  BARRINGTON D. PARKER, Circuit Judge:

9      Lamont Reeves appeals from a judgment of conviction in the United States District

10 Court for the Eastern District of New York (Garaufis, *J.*) for possession of child pornography.

11 This appeal requires us to consider the validity of a condition of supervised release that obligated

12 Reeves, upon entry into a "significant romantic relationship," to notify the United States

13 Probation Department and to inform the other party to the relationship of his conviction.  We

14 conclude that the condition is unduly vague and not "reasonably necessary" to achieve the

15 objectives of 18 U.S.C. § 3553(a)(2).  Accordingly, the condition is vacated.

## BACKGROUND

19      In 2006, Reeves became the subject of a federal investigation arising from the theft of

20 Social Security funds.  That investigation led to charges, to which he ultimately pled guilty, that

21 he had stolen payments directed to his father who, in fact,  had died some ten years earlier.  In the

22 course of this investigation, federal agents discovered that Reeves maintained an extensive home

23 library of DVDs and CDs.  After Reeves consented to a search of these items, the agents

24 discovered that three of the DVDs contained child pornography.  Based on this discovery, the

25 Government charged Reeves with theft of the Social Security funds and with three counts of

26 possession of child pornography. *See* 18 U.S.C. § 2252(a)(4)(B).  Reeves subsequently entered

into a plea agreement to resolve the charges.  The agreement contemplated a period of

2   incarceration and a term of supervised release, a condition of which required him to register as a

3   sex offender.  The Probation Department prepared a Pre-Sentence Report ("PSR") covering all

4   charges that recommended a period of incarceration from 51 to 63 months and a term of

5   supervised release.  Although the PSR recommended various conditions of supervised release, it

6   did not recommend the condition that is the subject of this appeal.

7          Reeves is a 50 year-old father of two grown children, who was previously a long-time

8   employee of the New York court system with no history of domestic violence, no prior

9   involvement with the law except for the theft of Social Security funds, and no prior history of

10  pedophilia.  A psychological evaluation conducted in connection with the preparation of the PSR

11  indicated that, while it was difficult to predict the risk of recidivism, Reeves "does not present

12  with predatory tendencies toward children and test results suggest that he is not sexually attracted

13  to children per se."  The report recommended that he participate in sex-offender treatment and

14  that his Internet activity be monitored.  Another report indicated that Reeves "has had a

15  consistent employment history, understands and appreciates the illegality and immorality of his

16  offense conduct and is willing to participate in an intervention plan."

17         At sentencing, Reeves's counsel argued for a term of incarceration below the advisory

18  guideline range, which the government opposed.  The district court expressed concern that

19  Reeves didn't "really understand the gravity of what he [had] been involved in."  Addressing

20  Reeves, the court stated, "You're going to have to have therapy.  You're going to have to accept

21  that you have a problem and try to resolve it."  Ultimately, the district court imposed a below-

3

1    guidelines sentence of 40 months incarceration followed by five years supervised release.  The

2    sixth special condition of supervised release entered on the Judgment of Conviction required

3    Reeves to "notify the Probation Department when he establishes a significant romantic

4    relationship and . . . inform the other party of his prior criminal history concerning his sex

5    offenses."  The condition also provided that "[t]he defendant understands that he must notify the

6    Probation Department of that significant other's address, age, and where the individual may be

7    contacted."  This condition was not recommended in the PSR or by the government, nor was it

8    discussed at sentencing. No party had notice of the condition until it appeared in the Judgment of

9    Conviction.

10
11
                                      **DISCUSSION**

12         We review *de novo* questions of law arising from the imposition of a condition of

13    supervised release. *United States v. Johnson*, 446 F.3d 272, 277 (2d Cir. 2006).  "A district court

14    retains wide latitude in imposing conditions of supervised release," *United States v. MacMillen*,

15    544 F.3d 71, 74 (2d Cir. 2008), and therefore we subject the conditions themselves to "an abuse

16    of discretion standard, where any error of law constitutes an abuse of discretion." *Johnson*, 446

17    F.3d at 277.  The government does not contest that, even though Reeves did not object to the

18    challenged condition at sentencing, we apply a relaxed plain error review here because he did not

19    receive prior notice of the condition and the error relates only to sentencing. *See* Fed. R. Crim. P.

20    52(b); *United States v. Sofsky*, 287 F.3d 122, 125-26 (2d Cir. 2002) (reviewing a supervised

21    release condition "without insisting on strict compliance with the rigorous standards of Rule

52(b)" where the PSR did not recommend the condition and defendant had no prior knowledge

that it would be imposed).

Under 18 U.S.C. § 3583(d), district courts must impose certain mandatory conditions of

supervised release. However, the condition in question is not among those required by the

statute. District courts also have discretion to impose other, non-mandatory conditions of

supervised release – yet this authority is not unlimited. By statute, release conditions must,

among other things, be "reasonably related" to certain prescribed sentencing factors and

"involve[] no greater deprivation of liberty than is reasonably necessary" to achieve the purposes

of sentencing. *Id.*; *see United States v. Myers*, 426 F.3d 117, 123-24 (2d Cir. 2005).[1] Reeves

contends that the condition in question is not reasonably related to these statutory factors and that

the associated deprivation is greater than necessary.

Before we reach any of these concerns, we must determine what the condition actually

means. If a condition, however well-intentioned, is not sufficiently clear, it may not be imposed.

"Due process requires that [a] condition[] of supervised release be sufficiently clear to give the

person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he

may act accordingly." *United States v. Simmons*, 343 F.3d 72, 81 (2d Cir. 2003) (internal

quotation marks omitted). There, we explained that a defendant has a "due process right to

---

[1] Specifically, the conditions must be "'reasonably related' to (i) the nature and circumstances of the offense and the history and characteristics of the defendant, and (ii) the purposes of sentencing, including the need to afford adequate deterrence, to protect the public from further crimes of the defendant, and to provide the defendant with needed training or treatment." *United States v. Johnson*, 446 F.3d 272, 277 (2d Cir. 2006) (quoting *United States v. Germosen*, 139 F.3d 120, 131 (2d Cir. 1998) (citing, *inter alia*, 18 U.S.C. § 3583(d))). These sentencing objectives determine the appropriateness of a given deprivation of liberty. *See Johnson*, 446 F.3d at 277.

5

conditions of supervised release that are sufficiently clear to inform him of what conduct will

result in [the defendant] being returned to prison." *Id.* (internal quotation marks omitted). A

condition is "unconstitutional if it is so vague that 'men of common intelligence must necessarily

guess at its meaning and differ as to its application.'" *MacMillen*, 544 F.3d at 76 (quoting

*Simmons*, 343 F.3d at 81). On the other hand, a good deal of flexibility is afforded district courts.

"[C]onditions need not be cast in letters six feet high, or . . . describe every possible permutation,

or . . . spell out every last, self-evident detail." *Johnson*, 446 F.3d at 280 (internal quotation

marks omitted).

We easily conclude that people of common intelligence (or, for that matter, of high

intelligence) would find it impossible to agree on the proper application of a release condition

triggered by entry into a "significant romantic relationship." What makes a relationship

"romantic," let alone "significant" in its romantic depth, can be the subject of endless debate that

varies across generations, regions, and genders. For some, it would involve the exchange of gifts

such as flowers or chocolates; for others, it would depend on acts of physical intimacy; and for

still others, all of these elements could be present yet the relationship, without a promise of

exclusivity, would not be "significant." The history of romance is replete with precisely these

blurred lines and misunderstandings. *See, e.g.*, Wolfgang Amadeus Mozart, *The Marriage of*

*Figaro* (1786); Jane Austen, *Mansfield Park* (Thomas Egerton, 1814); *When Harry Met Sally*

(Columbia Pictures 1989); *He's Just Not That Into You* (Flower Films 2009).

This does not end our inquiry, however, since a subjective element in a release condition

may be sufficiently specific if tethered to objective criteria. For example, in *Simmons* we

6

1    explained that a release condition prohibiting defendant's possession or viewing of pornographic

2    material was not unconstitutionally vague because, notwithstanding the elusive nature of what

3    qualifies as pornography in the artistic or cultural context, "federal law provides considerable

4    guidance as to the meaning of the term pornography . . . . [that] avoids reference to subjective

5    standards." 343 F.3d at 81-82.

6         Here, by contrast, the supervised release condition has no objective baseline. No source

7    provides anyone – courts, probation officers, prosecutors, law enforcement officers, or Reeves

8    himself – with guidance as to what constitutes a "significant romantic relationship." We accept

9    the force of Reeves's assertion that his continued freedom during supervised release should not

10   hinge on the accuracy of his prediction of whether a given probation officer, prosecutor, or judge

11   would conclude that a relationship was significant or romantic. *See Simmons*, 343 F.3d at 81

12   (explaining that a condition of supervised release must provide clear guidance as to what conduct

13   will result in being returned to prison).

14        In addition to being too vague to be enforceable, we are not persuaded that the special

15   condition is "reasonably related" to the sentencing objectives of 18 U.S.C. § 3553(a), as required

16   by § 3583(d). A condition of supervision is related to the statutory goals if it is "designed, in

17   light of the crime committed, to promote the [defendant's] rehabilitation and to insure the

18   protection of the public." *United States v. Tolla*, 781 F.2d 29, 34 (2d Cir. 1986). No condition

19   is presumed valid; rather, a condition is reasonable only if it is not "unnecessarily harsh or

20   excessive." *Id.*

1    We have no doubt that in the appropriate circumstance a court, on the recommendation of

2    the Probation Department, could require a defendant to notify third-parties of risks arising from

3    the defendant's criminal record, personal history, or characteristics.   *See* U.S.S.G §

4    5D1.3(c)(13).  But the history and characteristics of Reeves's offense do not indicate that he

5    poses a risk to those with whom he would have "a significant romantic relationship."  Reeves has

6    two children from two separate relationships and there are no allegations of domestic violence or

7    abuse in any of these relationships.  He possessed but did not create or distribute child

8    pornography, and his psychological evaluation noted that he "does not present with predatory

9    tendencies toward children and test results suggest that he is not sexually attracted to children per

10   se." Nothing in the record suggests that he has been a threat to a romantic partner.  In short, on

11   these facts, we are hard-pressed to see how the notification requirement is reasonably necessary

12   to protect someone with whom Reeves might choose to associate. Nor is it at all apparent that

13   such a notification requirement will promote his rehabilitation. To the contrary, the requirement

14   would almost certainly adversely affect, and could very well prematurely end, any intimate

15   relationship he might develop, placing him at a greater risk of social isolation and thus impair,

16   rather than enhance, his rehabilitation.

17   We also find that the condition effects an unnecessary deprivation of liberty, because it is

18   not reasonably necessary for deterrence, the protection of the public, or rehabilitation, and, in

19   addition, is not narrowly tailored.  To determine if a condition imposes an unnecessary

20   deprivation of liberty, we must first identify the "cognizable liberty interest" with which the

21   condition interferes. *Myers*, 426 F.3d at 125.  Reeves contends that he enjoys a right to enter into

8

2   and to maintain intimate personal relationships and that the condition unnecessarily burdens that

3   right. The right which Reeves invokes is, as the government concedes, well-established. *See id.*

4   at 125 n.8 (citing *Roberts v. U.S. Jaycees*, 468 U.S. 609, 617-18 (1984) (explaining that "choices

5   to enter into and maintain certain intimate human relationships must be secured against undue

6   intrusion by the State because of the role of such relationships in safeguarding the individual

7   freedom that is central to our constitutional scheme")); *see also Sanitation & Recycling Indus.,*

8   *Inc. v. City of New York*, 107 F.3d 985, 996 (2d Cir. 1997) (explaining that the constitutional

9   right "extends to relationships that 'attend the creation and sustenance of a family -- marriage,

10  childbirth, the raising and education of children, and cohabitation with one's relatives'") (quoting

11  *Roberts*, 468 U.S. at 619). The government contends – correctly – that Reeves has sharply

12  diminished associational rights during his supervised release. As a result, it argues that the

13  condition does not infringe these rights because it is limited in duration and scope, and is

14  narrowly-tailored to serve the compelling government interest in protecting children affected by

15  any such romantic relationship. *Cf. Farrell v. Burke*, 449 F.3d 470, 497 (2d Cir. 2006)

16  (concluding that a defendant who had been convicted of sodomy with boys between the ages of

17  13 and 16 had a diminished First Amendment right to access pornography because of his status

18  as a paroled sex offender).

19       Where a condition of supervised release impairs a protected associational interest, "our

20  application of [§ 3583(d) requirements] must reflect the heightened constitutional concerns"

21  involved. *Myers*, 426 F.3d at 126. Specifically, "a deprivation of that liberty is 'reasonably

22  necessary' only if the deprivation is narrowly tailored to serve a compelling government

9

1   interest." *Id.* Although the government's interest in protecting a romantic partner's children is

2   no doubt compelling, the special condition makes no mention of children. Consequently, it is not

3   reasonably directed –or directed at all for that matter–towards this objective.  Even assuming

4   *arguendo* that the goal of the condition is the protection of children, we would conclude that it is

5   not narrowly tailored since it applies to *any* significant romantic relationship, even those which

6   would not bring Reeves into contact with children. *See United States v. Peterson*, 248 F.3d 79,

7   86 (2d Cir. 2001) ("In view of the defendant's prior child sex abuse, the court had justification to

8   impose a condition of probation that prohibits the defendant from being at educational and

9   recreational facilities where children congregate. . . . [H]owever, there would be no justification

10   to forbid the defendant from being at parks and educational or recreational facilities where

11   children do not congregate.").

12
13                                          **CONCLUSION**
14
15          For the forgoing reasons, the condition of supervised release is **VACATED** and the case

16   **REMANDED** for proceedings consistent with this decision.

17

RECEIVED
JUL 15 2011
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

75242

U.S. POSTAGE PAID
SEAGOVILLE, TX
75159
JUL 13 '11
AMOUNT
$0.00
00098144-08

1000    75242

⟨⟩36037-177⟨⟩
Court Clerk
1100 Commerce ST
Dallas, TX 75242
United States

Ronald N. Pearson
#36037-177
FCI Int 9000
Seagoville, TX
75159-9000

U.S. v PEARSON
CASE No. 3:06-CR-369-0(1)